# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL RIVERA,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration,<br><br>    Defendant. | Case No. ED CV 16-791-SP<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## **INTRODUCTION**

On April 25, 2016, plaintiff Raul Rivera filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"),[1] seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill, the current Acting Commissioner of Social Security Administration, has been substituted as the defendant.

1

purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") determination was supported by substantial evidence; and (2) whether the ALJ properly considered plaintiff's credibility. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 9-16; Defendant's Memorandum in Support of Answer ("D. Mem.") at 4-10.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ's RFC determination was not supported by substantial evidence and the ALJ failed to properly assess plaintiff's credibility. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated herein.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was forty-six years old on the alleged disability onset date, has an eleventh grade education. AR at 29, 53. Plaintiff has past relevant work as an assistant store manager, chauffeur driver, and stock selector. *Id*. at 47-48.

On October 16, 2012, plaintiff filed an application for a period of disability and DIB, alleging on onset date of December 10, 2009 due to depression, anxiety, hypertension, sleep apnea, chronic bronchitis, emphysema, and hyperlipidemia.[2] *Id*. at 53. The Commissioner denied plaintiff's applications initially and upon reconsideration, after which he filed a request for a hearing. *Id*. at 82-93.

---

[2] In the Memorandum in Support of Plaintiff's Complaint, plaintiff contends he applied for a period of disability, DIB, and supplemental security income ("SSI"). P. Mem. at 2. There is no application for SSI in the record. *See also* AR at 12.

2

Plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ on May 22, 2014. *Id*. at 24-52. The ALJ also heard testimony from Elizabeth Brown-Ramos, a vocational expert, and Michele Rivera, plaintiff's spouse. *Id*. at 39-51. On October 2, 2014, the ALJ denied plaintiff's claims for benefits. *Id*. at 12-20.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff did not engage in substantial gainful activity from December 10, 2009, the alleged onset date, through December 31, 2013, the date last insured. *Id*. at 14.

At step two, the ALJ found plaintiff suffered from the following severe impairments: diabetes; obesity; degenerative disc disease, neck; sleep apnea; and chronic obstructive pulmonary disease ("COPD"). *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 16.

The ALJ then assessed plaintiff's RFC,[3] and determined he had the RFC to perform light work with the limitations that he could: occasionally perform postural activities; occasionally perform above shoulder work; not climb ladders, scaffolds, or ropes; not work around pulmonary irritants; have no exposure to extremes of temperatures; and not work at unprotected heights or around dangerous machinery. *Id.*

The ALJ found, at step four, that plaintiff could perform his past relevant

---

[3] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

work as an assistant store manager and chauffeur driver. *Id*. at 19. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 20.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council on February 25, 2016. *Id.* at 2-4. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A. The ALJ's RFC Determination Was Not Supported by Substantial Evidence

Plaintiff argues the ALJ's determination that plaintiff had the RFC to perform light work with certain limitations was not supported by substantial evidence. P. Mem. at 9-12. Specifically, plaintiff contends the ALJ's RFC determination was not supported by any medical opinion and instead was based on his own improper lay interpretation of the medical evidence. *See id.*

RFC is what one can "still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1)-(2). The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including non-severe impairments. *Id.* When the record is ambiguous, the Commissioner has a duty to develop the record. *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *see also Mayes*, 276 F.3d at 459-60 (ALJ has a duty to develop the record further only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) ("If the ALJ thought he needed to know the basis of [a doctor's] opinion[ ] in order to evaluate [it], he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physician[ ] or submitting further questions to [him or her]."). This may include retaining a medical expert or ordering a consultative examination. 20 C.F.R. § 404.1519a(a). The Commissioner may order a consultative examination when trying to resolve an inconsistency in evidence or

when the evidence is insufficient to make a determination. 20 C.F.R. § 404.1519a(b).

### 1. **The Medical Evidence**[4]

Plaintiff's medical records reflect that he was treated by physicians at Kaiser Permanente from April 2010 through August 2012. *See* AR at 208-397. Diagnostic images from April 29, 2010 revealed plaintiff had degenerative changes of the thoracic spine but the treatment records did not reflect any subjective complaints or objective findings of neck or back pain. *See id*. at 219; *see also id.* at 208-397.

In February 2013, plaintiff began seeking treatment at High Desert Primary Care from Dr. Artin Gevorkian. *Id*. at 403. On April 19, 2013, after plaintiff complained of left hand numbness that radiated to his shoulder and reported a history of neck pain, he was referred to a neurologist for an electromyogram test ("EMG"). *Id*. at 423-25. On May 8, 2013, Dr. Raj H. Karnani performed nerve conduction studies ("NCS") and an EMG, and concluded the NCS results suggested plaintiff had carpal tunnel syndrome. *Id*. at 467-68. At the follow up visit, based on the test results and plaintiff's continued complaints of numbness and problems with his left hand grasp , Dr. Gevorkian referred plaintiff to general surgery. *Id*. at 414.

Dr. Sunny Cheung, an orthopedic surgeon, examined plaintiff on July 15, 2013. *See id*. at 464-66. Dr. Cheung observed plaintiff had a normal gait; negative Tinel's, Phalen's and Neer's signs; and full range of motion in the shoulder. *See id*. at 465-66. But Dr. Cheung also observed plaintiff had reproducible elbow forearm numbness and shoulder pain. *See id*. Based on the

---

[4] Plaintiff argues the ALJ erred with respect to the findings concerning his spinal impairments. As such, this court will only address the medical evidence relating to the spine.

clinical exam and review of the EMG, Dr. Cheung opined plaintiff had cervical radiculopathy rather than carpal tunnel syndrome and ordered an MRI. *Id.* at 466.

A July 2013 MRI over the cervical spine revealed plaintiff had, among other things, straightening of the cervical curvature, multilevel degenerative changes resulting in spinal canal and neural foraminal stenosis, disc bulges, and disc protrusions. *Id.* at 470-71. Dr. Vikram Parmar, an orthopedic surgeon, reviewed the MRI and examined plaintiff on August 19, 2013. *See id.* at 458-63. Dr. Parmar observed plaintiff had moderate pain on palpation of the cervical facets, decreased range of motion of the cervical spine, trigger points in the head and neck, an antalgic gait, and decreased sensation. *See id.* at 460-61. Based on the MRI and physical examination, Dr. Parmar opined plaintiff had cervical radiculopathy and cervical spinal stenosis, and recommended physical therapy and selective nerve root blocks or facet blocks as the initial course of treatment. *Id.* at 463. The treatment records indicate the cervical injections did not provide plaintiff relief. *See id.* at 447.

A November 2013 MRI of the lumbar spine revealed plaintiff had, among other things, levoconvex scoliotic curvature of the lumbar spine, diffuse prominence of the posterior epidural fat which diffusely narrowed the spinal canal, and multi-level disc bulges and facet joint arthropathy which resulted in spinal canal stenosis. *See id.* at 451. Dr. Parmar observed trigger points in the lower back on March 31, 2014. *See id.* at 448-49. Consequently, in addition to cervical radiculopathy and cervical spinal stenosis, Dr. Parmar diagnosed plaintiff with lumbar spinal stenosis, but found that the neck pain was much more disabling. *Id.* at 454.

Based on the MRIs, physical examinations, and lack of response to the cervical injections, Dr. Parmar opined plaintiff should undergo cervical spine surgery. *Id.* A neurologist agreed with Dr. Parmar's assessment after examining

7

plaintiff and reviewing his MRIs. *See id*. at 537-38.

### 2. **The Medical Opinions**

Two state agency physicians, Dr. N. Tsoulos and Dr. G. Lockie, both of whom are pediatricians, submitted opinions concerning plaintiff's RFC. Both state agency physicians reviewed plaintiff's medical records as of February 2013. *See id*. at 56-59, 72-73. Based upon a review of the records, the state agency physicians opined plaintiff had the RFC to perform medium work with some exertional, postural, and environmental limitations. *See id*. at 63-64, 74-76.

### 3. **The ALJ's Findings**

The ALJ determined plaintiff had the ability to perform light work with some exertional, postural, and environmental limitations. *See* AR at 16. In reaching this determination, the ALJ gave the opinions of the state agency physicians some weight, considered the objective evidence of spinal stenosis and degenerative changes, and considered plaintiff's testimony, which he found was "less than fully credible." *See id*. at 17, 19.

The crux of the issue here is whether the ALJ could solely rely on his own interpretation of the medical records in order to make an RFC determination or had a duty to develop the record. No physician who had reviewed plaintiff's medical records pertaining to his spinal impairments provided an opinion regarding any functional limitations. Thus, the ALJ's RFC determination concerning the severity of plaintiff's neck and back pain and their resultant functional limitations were solely based on his own interpretation of the MRIs and treatment notes. But an ALJ may not act as his own medical expert as he is "simply not qualified to interpret raw medical data in functional terms." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *see Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ should not make his "own exploration and assessment" as to a claimant's impairments); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not

succumb to the temptation to play doctor and make their own independent medical findings."); *Miller v. Astrue*, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010) (it is improper for the ALJ to act as the medical expert); *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (ALJ is not qualified to extrapolate functional limitations from raw medical data); *Afanador v. Barnhart* 2002 WL 31497570, at *4 (N.D. Cal. Nov. 6, 2002) (ALJ failed to develop the record when she did not obtain a medical opinion concerning claimant's specific diagnosis). Instead, the ALJ should have retained an examining physician or medical expert to properly evaluate the evidence.

The absence of a medical opinion is not necessarily fatal, but the RFC determination still must be supported by substantial evidence. *See Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ must provide evidentiary support for his interpretation of medical evidence). Defendant contends the ALJ had no duty to retain a consultative examiner because there was sufficient evidence for the ALJ to make an RFC determination. D. Mem. at 6. Defendant argues the findings that plaintiff's joints were stable with a good range of motion and plaintiff had good muscle strength, as well as plaintiff's ability to perform a range of daily activities, constituted substantial evidence to support the ALJ's RFC determination. *See id.* The court disagrees. This was not a matter of the ALJ synthesizing all the medical evidence and opinions to reach his own RFC determination. The treatment records did not provide sufficient indications of plaintiff's functional limitations. And the few findings that could translate to function limitations were ambiguous – some could support a less restrictive RFC (*e.g.*, full range of motion in joints) while other findings could support a more restrictive RFC (*e.g.*, pain upon palpation and decreased range of motion in the lumbar spine). *See* AR at 448. Moreover, by the ALJ's own account, the RFC determination was based on: (1) the state agency physicians' opinions, which did not consider the spinal impairment medical

9

evidence; (2) diagnostic images; and (3) plaintiff's testimony regarding his pain and limitations, which were improperly discounted as discussed below. *See id.* at 18-19. At bottom, it is clear the ALJ formulated an RFC based on his interpretation of the MRIs and not on medical judgment, which is improper. The ALJ was not qualified to translate the data into functional limitations.

Accordingly, the RFC determination was not supported by substantial evidence.

**B.**     **The ALJ Failed to Properly Assess Plaintiff's Credibility**

Plaintiff contends the ALJ failed to properly consider his credibility. P. Mem. at 12-16. Specifically, plaintiff argues none of the ALJ's reasons for discounting his credibility were clear and convincing and supported by substantial evidence. *Id.*

An ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p.[5] To determine whether testimony concerning symptoms is credible, an ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, an ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."

---

    [5]     "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

10

*Smolen*, 80 F.3d at 1281 (citation omitted); *accord Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). The ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 18. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. The ALJ provided one express reason for discounting plaintiff's credibility – his alleged symptoms were inconsistent with his activities of daily living. *Id*. at 17. The ALJ also implied plaintiff was not fully credible because the severity of his alleged symptoms was not supported by the objective medical evidence. *See id*. at 18.

In a Function Report dated January 14, 2013, plaintiff indicated he suffered from anxiety, did housework, did light yard work, and could walk a quarter to half a mile or ten to fifteen minutes before needing to rest. *Id*. at 171-79. At the hearing, plaintiff testified that he was unable to work due to his depression and neck and back problems, which started in the prior year. *Id*. at 31. Plaintiff testified that his hands were numb and he: needed to lay down for four hours a day due to his inability to sleep well; could walk for ten to sixteen minutes at one time; could only lift ten pounds; suffered side effects from his medication such as fatigue and blurred vision; watered his garden; spent time with his dog; and tried to cook. *See id*. at 31-35.

The first reason cited by the ALJ for finding plaintiff less credible was that

his alleged symptoms were inconsistent with his activities of daily living. *Id.* at 17; *see Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (in making a credibility determination, an ALJ may consider inconsistencies between a claimant's testimony and conduct). The ALJ found that plaintiff was able to engage in a "somewhat normal level of daily activities and interaction," including doing household chores, caring for the pet, and walking. AR at 17.

Inconsistency between a claimant's alleged symptoms and her daily activities may be a clear and convincing reason to find a claimant less credible. *Tommasetti*, 533 F.3d at 1039; *Bunnell*, 947 F.2d at 346. But "the mere fact a [claimant] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant does not need to be "utterly incapacitated." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Here, plaintiff's activities as reported at the hearing were not inconsistent with his alleged physical symptoms. None of the activities cited by the ALJ were inconsistent with plaintiff's alleged lifting, walking, and hand limitations.

Moreover, any inconsistencies between plaintiff's statements in the Function Report and his testified alleged symptoms as would not constitute a clear and convincing reason for discounting plaintiff's credibility. Specifically, the ALJ noted plaintiff reported no trouble with lifting, standing, and walking in the Function Report and stated he was able to do household chores. *See* AR at 17. But at the time plaintiff completed the Function Report, he had not yet begun to suffer from neck and back pain. Between the completion of the Function Report and hearing, plaintiff experienced the onset of new impairments, and thus plaintiff may have been expected to testify to additional limitations at the hearing that he did not have when completing the Function Report. In other words, these

12

"inconsistencies" between plaintiff's alleged symptoms as reported at the hearing and his reported daily activities in January 2013 appear in fact to have been changes in circumstances rather than inconsistencies.

Although not expressly cited as a reason for finding plaintiff less credible, the ALJ's decision implied that he also found plaintiff less credible because the objective medical evidence did not support plaintiff's alleged symptoms. *See id*. at 18; *see Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001). The ALJ noted that plaintiff had normal range of motion in his musculoskeletal system with no tenderness in April 2010. *See* AR at 18. The ALJ then noted that a November 2013 MRI of plaintiff's lumbar spine and July 2013 MRI of the cervical spine showed plaintiff had, among other things, levoconvex scoliotic curvature, diffuse prominence of the posterior epidural fat which diffusely narrowed the spinal canal, multi-level disc bulges and protrusions, straightening of the cervical curvature, and multilevel degenerative changes resulting in spinal canal and neural foraminal stenosis, and he acknowledged a physician recommended cervical spine surgery. *See id.* Given the MRI findings, the objective medical evidence clearly supported plaintiff's complaints.

In sum, the ALJ erred in discounting plaintiff's credibility. The ALJ failed to provide clear and convincing reasons supported by substantial evidence for finding plaintiff less credible.

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful

purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required to fully develop the record. On remand, the ALJ shall retain a consultative examiner or medical expert, and either credit his or her opinion or provide specific and legitimate reasons supported by substantial evidence for rejecting it. The ALJ shall also reconsider plaintiff's credibility and either accept his testimony or provide clear and convincing reasons for rejecting it. The ALJ shall then proceed through steps two, three, four, and, if necessary, five to determine what work, if any, plaintiff was capable of performing.

//
//
//

14

# VI.
# CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: October 31, 2017

_____
SHERI PYM
United States Magistrate Judge